Filed 4/24/17; pub. & mod. order 5/19/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of PATRICIA J. and ROBERT A. MINKIN. | |
| PATRICIA J. MINKIN, | G052947 |
| Appellant, | (Super. Ct. No. 02D009601) |
| v. | O P I N I O N |
| ROBERT A. MINKIN, | |
| Respondent. | |

Appeal from an order of the Superior Court of Orange County, James L. Waltz, Judge.  Affirmed.

Law Office of Melissa M. Kelley, Melissa M. Kelley; Law Offices of William J. Kopeny, William J. Kopeny; Law Offices of Dorie A. Rogers, Dorie A. Rogers and Lisa R. McCall for Appellant.

Stephen Temko and Dennis Temko for Respondent.

*          *          *

The primary issue on this appeal is what appellant Patricia J. Minkin and respondent Robert A. Minkin intended by the term "annual bonus" when they agreed in 2004 that Robert would pay Patricia 41 percent of his annual bonuses as additional spousal support for the following 10 years.[1] A few years later, Robert switched jobs and his compensation package changed from simply a salary and potential annual bonus to a package that included several different components. Patricia brought a motion to determine support arrearages to resolve a dispute between the parties over which components of Robert's compensation constituted annual bonuses under their stipulation. As explained below, we agree with the trial court's interpretation that an annual bonus is a discretionary payment based upon performance, and not, as Patricia argued, all payments above base salary. We therefore affirm the court's order that Robert underpaid Patricia by approximately $200,000, but not the roughly $700,000 Patricia sought.

We also affirm the trial court's decision awarding Patricia only a portion of the attorney fees she incurred to enforce Robert's obligation to pay additional spousal support. The parties' stipulation included a provision that entitled the prevailing party in any enforcement proceeding to recover all of his or her costs, including reasonable attorney fees. Patricia's contention this provision entitled her to recover all of her fees as a matter of law is contrary to the provision's plain language and the governing law. We also conclude Patricia failed to show the court abused its discretion in setting the amount of reasonable attorney fees.

Patricia brought a second motion, asking the trial court to modify her monthly spousal support. In addition to the percentage of his bonuses that Robert paid as additional spousal support, the parties' stipulated judgment also required him to pay $7,000 in monthly spousal support for 10 years. Following the expiration of Robert's

---

[1] We refer to the parties by their first names to avoid confusion. No disrespect is intended.

obligation to pay monthly support, Patricia asked the court to reinstate her spousal support. The trial court denied Patricia's request because she failed to establish a material change in circumstances that justified reinstating monthly support after it expired under the parties' agreement. We find no abuse of discretion and affirm the trial court's order.

Finally, Patricia contends the trial court denied her due process and a fair hearing by limiting her cross-examination of Robert and refusing to allow live testimony regarding the amount of attorney fees. Patricia forfeited these challenges by failing to raise them in the trial court, and as explained below, the record nonetheless demonstrates they lack merit.

I

FACTS AND PROCEDURAL HISTORY

Robert and Patricia married in 1978. Patricia stopped working as a certified surgical technician to become a stay-at-home mom after the couple's first child was born in 1983. Robert continued his successful career as a hospital executive throughout the marriage.

When the couple separated in July 2002, Robert worked as an executive at St. Joseph Hospital in Orange, California, earning a $300,000 annual salary with a potential performance bonus no greater than 20 percent of his yearly salary. The bonus was discretionary and based on both his and the hospital's performance. After the couple separated, Patricia worked as a restaurant hostess and later worked in sales and marketing.

Robert and Patricia agreed on a final dissolution settlement in September 2004, and the trial court entered judgment based on the settlement in January 2005. The stipulated judgment required Robert to pay Patricia $7,000 in monthly spousal support until either party died, Patricia remarried, or July 15, 2014, whichever occurred first.

3

Based on Robert's bonuses from St. Joseph Hospital, the stipulated judgment also "awarded [Patricia] as additional spousal support forty-one (41) percent of [Robert's] annual bonus for a period of ten years, commencing with the year 2005 and continuing through the year 2014 bonus awarded, if any." The stipulated judgment further provided, "Payment of this additional spousal support is contingent on the award of such bonus and [Robert] shall provide [Patricia] with documentation of the bonus award, or non award, each year of the ten year period."

The stipulated judgment also awarded Patricia approximately $670,000 as her share of the couple's community property, and included the following attorney fee provision: "In [t]he event that either of the parties shall be required to bring any action or proceeding to enforce the provisions of this Stipulation or any court order made after merger of any provisions of this Stipulation in the dissolution judgment, the party prevailing in such action or proceeding shall be entitled to recover all costs of such enforcement proceeding, including reasonable attorney fees as set by the court."

In July 2006, Robert left St. Joseph Hospital to become the chief executive officer at Exempla Healthcare in Denver, Colorado. The compensation package he negotiated with his new employer included salary, participation in a senior management incentive plan, a 457(f) long-term incentive plan, a 457(b) deferred compensation plan, a change of control agreement, and a relocation plan. Robert lost his position with Exempla in January 2010, when a new company purchased the hospital and replaced the management team. Robert therefore received approximately $960,000 under the change in control agreement, which represented two years of salary. During his employment with Exempla, Robert received approximately $1,656,000 in salary, $235,000 under the senior management incentive plan, $632,000 under the 457(f) long-term incentive plan, $57,000 under the 457(b) deferred compensation plan, and an unspecified amount under the relocation plan. Robert paid Patricia the designated monthly spousal support throughout his time with Exempla, and also paid her 41 percent of the funds he received

4

under the senior management incentive plan. He did not pay her a percentage of any other compensation because he did not consider his other compensation components qualified as an annual bonus under the stipulated judgment.

During this time, Patricia worked as a store manager at an interior design company and later at a home and gift store. She also attended night school to earn an interior design degree. After doing so, she borrowed $350,000 against her home and $375,000 against a retirement account to open a children's boutique. The business did not succeed and Patricia filed for bankruptcy in 2009. The next year, Patricia suffered a driving under the influence conviction, which prevented her from obtaining some of the other jobs she sought in the ensuing years.

In July 2010, Robert joined The Camden Group as a healthcare consultant. He worked for Camden through late 2012, when that company was sold and a new management team took over. During this employment, he received an annual salary ranging from $350,000 to $370,000, and annual bonuses of $33,000 in 2011 and $200,000 in 2012. In late December 2012, Robert also received an additional bonus payment of approximately $98,000.

Shortly before he received that additional $48,000 bonus, and after learning Patricia was cohabitating with Stan Burnett in a romantic relationship, Robert filed a request to terminate or reduce spousal support, including the additional support based on his bonuses. While his motion was pending, Robert paid Patricia approximately $122,000 as her portion of the bonuses he received from The Camden Group, and to correct miscellaneous errors in prior payments. He did not pay her any of the $98,000 bonus because he received it after he filed his request to terminate or reduce spousal support.

In August 2013, the trial court granted Robert's request to modify spousal support and entered an order (1) reducing monthly spousal support to $4,500, (2) affirming that monthly spousal support would terminate in July 2014, as designated in

5

the stipulated judgment, and (3) terminating the additional spousal support based on Robert's annual bonuses, effective December 2012.

In December 2013, Patricia filed a request to determine spousal support arrearages, alleging Robert failed to pay additional spousal support he owed based on the bonuses he received between 2005 and 2012. Patricia sought approximately $387,000 in unpaid support plus approximately $184,000 in interest. She also sought attorney fees under the stipulated judgment's enforcement provision. Robert opposed the request, alleging Patricia sought payments that were not bonuses under the stipulated judgment. In August 2014, the trial court appointed a special master to hear the parties' evidence and render an advisory report.

After Robert's obligation to pay monthly spousal support expired in July 2014, Patricia filed a request to modify the trial court's most recent spousal support order by reinstating monthly support. Patricia claimed she had no income and could not support herself. She explained her current venture as a pepper farmer turned out to be more difficult than anticipated and unprofitable. Robert opposed the request, arguing Patricia had failed to show any material change in circumstances since the court's August 2013 spousal support order. He asserted Patricia continued to cohabitate with Burnett and she merely had repeated her earlier claim of inability to support herself.

In November 2014, the special master conducted an evidentiary hearing on the support arrearages and found Robert owed approximately $219,000 in accrued support and interest. The special master found only the funds Robert received from Exempla Healthcare under the senior management incentive plan and a portion of the funds he received under the 457(f) long-term incentive plan constituted bonuses. The special master also found $25,000 was a reasonable amount of attorney fees for Patricia's efforts to enforce the additional spousal support provision. In January 2015, Robert paid Patricia the approximately $219,000 the special master identified as support arrearages and interest.

6

Patricia objected to the special master's report and requested a trial de novo. In August 2015, the trial court conducted an evidentiary hearing on both the spousal support arrearages dispute and Patricia's request to reinstate monthly spousal support. Robert called a business school professor specializing in strategic management to testify on the nature of Robert's compensation from Exempla Healthcare. The expert defined a bonus as money an employee receives beyond ordinary salary or compensation and in the employer's discretion based on the employee's performance, the organization's performance, or both. An employee's continued employment does not guarantee the employee a bonus, but continued employment guarantees the employee his or her salary and other compensation. The expert concluded Exempla Healthcare's payments to Robert under the senior management incentive plan were bonuses because they were tied to performance, and a portion of the payments Robert received under the 457(f) long-term incentive plan were bonuses because they were based on the amount he received under the senior management incentive plan during the previous year. In the expert's view, the payments Robert received as salary and under the remainder of the 457(f) long-term incentive plan, the 457(b) deferred compensation plan, the change of control agreement, and the relocation plan were not bonuses because Robert was entitled to receive those funds without regard to his performance.

Patricia called two experts—a certified public accountant specializing in business valuation and forensic accounting, and a management consultant specializing in executive compensation—to testify on the nature of Robert's compensation from Exempla Healthcare. They agreed the payments Robert received under the senior management incentive plan were bonuses, but they disagreed that only a portion of the payments Robert received under the 457(f) long-term incentive plan were bonuses. According to Patricia's experts, the entire sum received under this plan was a bonus because it was compensation paid beyond Robert's base salary. Patricia's experts did not address the 457(b) deferred compensation plan, the change of control agreement, or the

7

relocation plan. Finally, Patricia's experts concluded the stipulated judgment required Robert to pay her a portion of the $98,000 bonus he received from The Camden Group in December 2012 because the payment was for work performed before the trial court terminated the additional spousal support, rather than an advanced bonus as Robert argued.

In October 2015, the trial court issued its statement of decision. On the arrearage issue, the court agreed with the special master's decision, but corrected several of the special master's mathematical calculations. Specifically, the court determined Robert failed to pay Patricia approximately $203,000 in additional spousal support based on the bonuses he received from Exempla Healthcare, but the $219,000 he paid Patricia following the special master's report resulted in an overpayment of approximately $16,000.[2] The court found Robert's expert to be more credible and his analysis regarding Robert's compensation more convincing than Patricia's experts. The court agreed with Robert's expert that an annual bonus was income paid to Robert in the discretion of his employer and without recourse if the employer elected not to pay. The court therefore found Patricia was entitled to 41 percent of the funds Robert received under Exempla's senior management incentive plan and 41 percent of that portion Robert's expert identified as a bonus under Exempla's 457(f) long-term incentive plan. Finally, the court concluded Patricia was not entitled to any portion of the $98,000 Robert received from The Camden Group in December 2012 because she failed to show it constituted a bonus Robert received before the court terminated the additional spousal support.

On Patricia's request to reinstate monthly spousal support, the trial court found Patricia failed to establish a material change in circumstances justifying the

---

[2] The court also determined Robert had overpaid Patricia $14,000 in monthly spousal support based on the retroactivity of the court's August 2013 order reducing monthly support. The precise amount of Robert's combined overpayments was $30,308.

8

requested relief. The court explained the couple negotiated and agreed to a 10-year term for Robert's obligation to pay monthly spousal support, and Patricia failed to establish any grounds for deviating from that agreement. The court also pointed out that Patricia failed to show Robert had the ability to resume paying monthly spousal support because he had recently lost his job and was receiving unemployment. Finally, the trial court denied Patricia's request for attorney fees on the motion to modify spousal support and granted her request for fees on the proceedings to enforce the additional spousal support provision. The court awarded Patricia $30,308, but set off that award against the $30,308 that Robert had overpaid in support following the special master's decision.

## II

### DISCUSSION

A. *The Trial Court Did Not Err in Interpreting the Stipulated Judgment's Additional Spousal Support Provision*

Patricia contends the trial court erred as a matter of law in interpreting the "annual bonus" language in the stipulated judgment as a discretionary performance-based payment by Robert's employer. Patricia contends the term means any payment Robert received above his base salary.[3] We find no error.

""""Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally."""" (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1012 (*Hibbard*).) """"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it

---

[3] Patricia only challenges the trial court's interpretation of the phrase "annual bonus," but she does not challenge how the trial court applied its interpretation to the various components of Robert's compensation. Accordingly, we only address the interpretation issue and express no opinion on which categories of compensation are covered by the court's interpretation.

governs." '" (*Id*. at p. 1013; see *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125 (*Securitas Security*).) " " "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." " " (*Hibbard*, at p. 1013.) "The parties' expressed objective intent, not their unexpressed subjective intent, governs." (*Securitas Security*, at p. 1125.)

"If [a stipulated judgment] is ambiguous, the reviewing court may examine the record for its scope and effect and may look at the circumstances of its making." (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 27 (*Samson*).) Indeed, "[e]xtrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. [Citations.] If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract. . . . [¶] The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Founding Members*).)

"The ultimate construction placed on the contract might call for different standards of review. When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence." (*Founding Members*, *supra*, 109 Cal.App.4th at pp. 955-956.)

Here, the additional spousal support provision is ambiguous. The stipulated judgment does not define the term annual bonus, and on its face the term reasonably may be interpreted as a discretionary payment based on performance or more broadly as any payment above base salary. We therefore examine the circumstances under which Robert and Patricia negotiated and entered into the stipulated judgment to determine which meaning they intended.

Robert worked for St. Joseph Hospital when the couple entered into the stipulated judgment, and his compensation included two components—his salary and an annual performance bonus no greater than 20 percent of his yearly salary. Robert and Patricia recognized he was not guaranteed an annual bonus every year because they agreed his obligation to pay additional spousal support was "contingent" on St. Joseph Hospital awarding him a bonus. Accordingly, the circumstances that existed when the parties entered into the stipulated judgment suggest they understood Robert's bonus was a discretionary payment by his employer based on his or the hospital's performance.

Moreover, both the parties and the trial court repeatedly referred to the additional spousal support provision as an "*Ostler/Smith*" award without any objection by Patricia.[4] An *Ostler/Smith* provision is "an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received." (*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387 (*Mosley*); see *Samson*, *supra*, 197 Cal.App.4th at p. 27.) Its purpose is to capture fluctuations in the supporting spouse's income that are not included in a flat rate amount of support. (*Samson*, at p. 27.) For example, in both *Ostler & Smith* and *Mosley*, the provision required the husband to pay a percentage of any performance bonus he received in his employer's discretion as additional support beyond a set amount of monthly support.

---

[4] *Ostler/Smith* refers to *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler & Smith*).

11

(*Mosley*, at pp. 1381-1382, 1387; *Ostler & Smith*, *supra*, 223 Cal.App.3d at pp. 37-38, 41-42.) Case law justifies an *Ostler/Smith* award "on the ground that future bonuses are not guaranteed, and it would be unfair to require the obligor to file motions for modification every time a bonus is reduced [or denied]." (*Samson*, at p. 27; see *Ostler & Smith*, at pp. 41-42.) Robert and Patricia structured the settlement agreement in a manner similar to an *Ostler/Smith* provision, and in the trial court both Patricia and Robert characterized the additional spousal support provision as an *Ostler/Smith* award. This further supports the interpretation they intended the annual bonus phrase to refer to a fluctuating, discretionary payment Robert received from his employer based on performance, not more broadly to all payments he received above base salary.

The parties cite no evidence suggesting they contemplated Robert's future compensation might include forms of compensation other than salary and annual bonuses, or that other forms of compensation would qualify as an annual bonus, such as the 457(f) long-term incentive plan Exempla Healthcare provided. *Samson* provides guidance on how to apply the additional spousal support provision to forms of compensation neither Robert nor Patricia contemplated when they entered into the stipulated judgment.

In *Samson*, the husband was a mutual fund wholesaler whose compensation included a base salary plus substantial sales commissions. (*Samson*, *supra*, 197 Cal.App.4th at p. 25.) After they separated, the husband and wife stipulated the husband would pay a set amount of monthly spousal support plus a percentage of "'all his [monthly] compensation'" over a designated amount. (*Id*. at p. 26.) Approximately a year later, the husband's employer laid him off and paid him a one time, lump sum severance that included 12 months of base salary, six months of commissions, and a few other minor components. The wife argued the entire lump sum payment was compensation received during a single month, and therefore the stipulated order entitled her to the designated percentage of the entire payment. The husband argued the payment

12

was an advance on future compensation that should be spread out over several months. The trial court agreed with the wife and ordered the husband to pay the designated percentage on essentially the entire severance payment. (*Id*. at pp. 26-27.)

The Court of Appeal reversed. Interpreting the term compensation in the stipulated support order, the *Samson* court determined the couple agreed to the percentage component of the support award to capture the fluctuations in the husband's monthly income caused by his sales commissions without requiring frequent requests to modify the award. The court also determined neither party contemplated the husband would be laid off or would receive a lump sum severance payment when they entered into the stipulated order, and therefore they formed no mutual intent on whether to treat a lump sum severance payment like ordinary monthly compensation. Based on these determinations, the *Samson* court concluded the trial court erred by treating the entire severance payment as compensation for the month in which it was received because the trial court failed to consider the purpose and nature of the severance payment. The *Samson* court remanded for the trial court to allocate the payment over several months based on the employer's designated purpose of compensating the husband for 12 months of lost salary, six months of commissions, and the other minor components of lost compensation. (*Samson*, *supra*, 197 Cal.App.4th at pp. 27-28.)

As explained above, Robert and Patricia agreed to the additional spousal support provision to capture the fluctuating component of Robert's compensation represented by the discretionary performance bonuses he received from St. Joseph Hospital, and there is no evidence they contemplated Robert's future compensation would include the 457(f) long-term incentive plan and other miscellaneous components he received from Exempla Healthcare. Under these circumstances, it is appropriate to interpret the annual bonus term to mean payments similar to, and that served the same purpose as, the annual bonuses Robert received when the couple entered into the

13

stipulated judgment—that is, discretionary payments by the employer based on performance.

Patricia's interpretation would sweep in forms of compensation that bear no semblance to the annual bonuses the parties contemplated when they entered into the stipulated judgment. For instance, Patricia cites no evidence showing the parties intended annual bonus would include deferred compensation and other forms of fixed payments Robert's employer promised to make regardless of performance. Although Patricia repeatedly suggests Robert negotiated his compensation with Exempla Healthcare to avoid receiving payments amounting to annual bonuses, she cites no evidence to support that suggestion or otherwise demonstrate Robert acted in bad faith. If Patricia thought Robert's increased income entitled her to greater spousal support, she should have sought to modify the amount of monthly support Robert paid rather than sweep other types of compensation under the annual bonus umbrella. We also note that Patricia's interpretation of annual bonus as any payment above base salary arguably would apply to all forms of compensation Robert received from Exempla Healthcare other than the one component expressly designated as salary. Patricia, however, makes no claim that the payments Robert received under the 457(b) deferred compensation plan, the change of control agreement, or the relocation plan constitute annual bonuses, and she thereby undermines her interpretation.

Patricia argues the trial court erred as a matter of law because it delegated the judicial function of interpreting the additional spousal support provision to the parties' experts. According to Patricia, the trial court simply adopted the interpretation of Robert's expert rather than independently interpreting the stipulated judgment. We disagree. The record does not reveal the trial court simply rubber stamped the interpretation offered by Robert's expert. Finding an expert's opinion credible does not mean the court failed to conduct its own analysis.

14

The record shows the trial court considered all of the evidence the parties offered on interpreting the annual bonus term in the additional spousal support provision. The court received evidence regarding the circumstances that existed when the parties entered into the stipulated judgment, it considered evidence regarding the parties' "understanding" of the additional spousal support provision, and it received expert testimony from both sides regarding not only what constitutes a bonus, but also the nature and purpose of each component of Robert's compensation. Indeed, the majority of the experts' testimony focused on the nature and purpose of Robert's compensation rather than the meaning of a bonus. Moreover, Patricia never objected to the testimony of Robert's expert, and expert testimony may be considered in interpreting an ambiguous contract. (See *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 747.)

Next, Patricia contends the trial court erred in interpreting the annual bonus term because the court refused to consider testimony from the parties concerning their understanding of that term. In support, Patricia cites the court's response when her counsel asked about her understanding of the additional spousal support provision and Robert's counsel objected her understanding was irrelevant based on the parol evidence rule. Specifically, the court said, "I'm quite clear on that, and you heard my speech a moment ago. Nonetheless, let's hear her testify. But, as I said, I'm not going to calculate arrearage because of [Patricia's] definition of a bonus, nor am I going to calculate arrearages based on [Robert's] definition of a bonus. I'm very clear on that. Let's let her testify." In its earlier "speech" the court said, "[A] bonus is not a bonus because one of these parties says it is a bonus. Because [Patricia] says it's a bonus doesn't make it a bonus. Because Robert says it's a bonus doesn't make it a bonus. Or if he says it's not a bonus, that doesn't settle the issue." Neither of these statements show the trial court erred.

15

Contrary to Patricia's argument, the trial court allowed Patricia to fully testify about her "understanding" of the annual bonus term.[5] Consequently, we view Patricia's complaint as an attack on the weight and credibility the court gave this testimony, but those are issues reserved for the trial court. As an appellate court, we may not make determinations based on the weight and credibility of the evidence. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1285-1286; *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1121-1122.) Moreover, the court's comments about this evidence fails to establish any error because they are consistent with the rule of contract interpretation that the parties' expressed objective intent governs, not their unexpressed subjective understanding. (*Securitas Security*, *supra*, 234 Cal.App.4th at p. 1125; *Huverserian v. Catalina Scuba Luv, Inc.* (2010) 184 Cal.App.4th 1462, 1467, fn. 2.) Patricia's testimony about her understanding of the term fairly may be viewed as her unexpressed subjective intent rather than the parties' expressed objective intent.

Finally, Patricia contends the undisputed evidence shows the parties understood the annual bonus term to mean payments above base salary. In support, she points to a letter Robert sent her in February 2013. At that time, Robert forwarded Patricia her percentage of the bonuses he received from The Camden Group and sought to resolve their existing dispute over the additional spousal support to which Patricia was entitled. Robert's letter stated, "I saw this as a significant difference from a bonus which is defined as 'payment above base salary' as we agreed when we developed the Settlement and as was typical to my prior compensation during our marriage." The trial court received and acknowledged this evidence, but expressly gave it little, if any, weight based on Robert's testimony during the hearing. Patricia offers no response to the court's

---

[5] When Patricia quoted the trial court's comments in her opening brief, she omitted the portions of the quote showing the court allowed her to testify about her understanding of the additional spousal support provision.

16

determination this letter was entitled to little weight.  Again, as the trier of fact, the trial court "'is the sole judge of the credibility and weight of the evidence. . . .'" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)  Contrary to Patricia's suggestion, the evidence on this point hardly can be classified as undisputed.

In sum, the annual bonus term in the stipulated judgment is ambiguous and the parties submitted substantial evidence—both disputed and undisputed—to support their respective interpretations of the term.  We reject Patricia's contention the trial court failed to perform the judicial function of independently interpreting the annual bonus term.  We conclude substantial evidence supports the court's interpretation of the term as a discretionary payment Robert's employers made based on performance and for which he has no recourse in the event his employers exercised their discretion not to make a particular payment.

B.      *The Trial Court Did Not Abuse Its Discretion in Deciding the Amount of Fees to Award for Patricia's Efforts to Enforce the Stipulated Judgment*

Patricia contends the trial court erred for two reasons when it awarded her only $30,308 of the nearly $80,000 in attorney fees she incurred to enforce the additional spousal support provision.  First, she contends the court erred as a matter of law because the attorney fee provision in the stipulated judgment entitled her to all her incurred costs.  Second, she contends the court abused its discretion as a matter of law because it awarded her exactly the amount Robert overpaid after receiving the special master's report.  We disagree with both contentions.

Patricia sought her attorney fees under the enforcement provision in the stipulated judgment rather than the statutory provisions that generally authorize attorney fee awards in family law proceedings.  That provision provides the prevailing party in an action to enforce the stipulated judgment "shall be entitled to recover all costs of such enforcement proceeding, including reasonable attorney fees as set by the court."  No one

17

disputes Patricia's entitlement to recover fees and costs under this provision.  The only issue is the amount of attorney fees the court awarded.

Whether an award of attorney fees is based on a statutory or contractual provisions, "'[t]he trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles.'"  (*Hill v. Affirmed Housing Group* (2014) 226 Cal.App.4th 1192, 1196 (*Hill*); see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).)  "This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 452 (*Meister*).)

"'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"'— meaning that it abused its discretion."  (*PLCM*, at p. 1095; *Hill*, at p. 1196 ["'We will reverse a fee award only if there has been a manifest abuse of discretion'"].)  The appellant challenging the award "bear[s] the burden of affirmatively establishing that the trial court abused its discretion."  (*Hill*, at p. 1196.)  As with most trial court orders, we "'presume the trial court's attorney fees award is correct.'"  (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 433-434.)

Contrary to Patricia's contention, the stipulated judgment's enforcement provision did not entitle her to all of her attorney fees as a matter of law.  The provision's plain language limited her to "reasonable attorney fees as set by the court."  The foregoing authorities demonstrate the trial court is vested with broad discretion to determine what amounts to reasonable attorney fees even when the parties agree the prevailing party is entitled to recover his or her fees and costs.  (See *PLCM*, *supra*, 22 Cal.4th at p. 1096 ["Although the terms of the contract may be considered, they 'do

18

not compel any particular award'"].)  Patricia cites no authority to support her contention to the contrary.

We also reject her contention the trial court necessarily abused its discretion by awarding her the exact amount the court found Robert had overpaid in spousal support.  Although the court awarding the exact amount of overpayment may be evidence the trial court abused its discretion, it is not enough to overcome the presumption in favor of the court's decision and establish an abuse of discretion as a matter of law.  Patricia makes no effort to show why $30,000 in attorney fees is an unreasonable award for the work her attorneys performed based on the facts of this case.  Indeed, even though the two amounts match, that alone does not mean the fee amount was not reasonable based on the surrounding circumstances.

The record reveals Patricia initiated these proceedings to enforce the additional spousal support provision, and the trial court referred the matter to the special master for an evidentiary hearing on Patricia's claims.  After considering the evidence, the special master found Robert had underpaid by nearly $220,000 and recommended an attorney fee award of $25,000.  Robert promptly paid the amount of spousal support the special master found due and owing, but Patricia was not satisfied with the special master's decision and exercised her right to demand a trial de novo.  Following the trial, Patricia obtained a worse result because the trial court made the same findings as the special master, but corrected several of the special master's mathematical errors that gave Patricia a greater recovery.  In making its attorney fee award, the court expressly relied on Patricia's decision to continue pursuing her claim she was entitled to significantly more spousal support than the special master awarded.  The court found that decision was "unwise[]" on the facts of this case.  The court also noted Patricia had failed to accept a reasonable settlement offer Robert proposed before trial.

The trial court properly considered the foregoing facts in determining Patricia was entitled to substantially less than the amount she sought.  (See *In re*

19

*Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356 ["The court should limit an award to fees that were reasonably necessary, including by taking into account overlitigation"]; *Meister*, *supra*, 67 Cal.App.4th at p. 453 [trial court may "consider[] informal settlement offers in setting the amount of a reasonable attorney[] fee award" because it bears on reasonableness of fees incurred after rejecting offer].) Patricia's failure to explain why the amount awarded was unreasonable proves fatal to her claim because it demonstrates she did not meet her burden to affirmatively show the court abused its discretion.

Finally, Patricia faults the trial court for noting in its ruling that beyond the approximately $30,000 the court awarded, Patricia had adequate access to funds to pay her attorney fees and costs. According to Patricia, the availability of funds was not a proper consideration because she sought fees under the stipulated judgment rather than the Family Code provisions. Patricia, however, was the party that raised the issue of access to the funds as a basis for a fee award. The trial court cannot be faulted for responding to Patricia's argument. Moreover, a fair reading of the court's decision shows it concluded Patricia's purported lacked of access to funds did not justify awarding her more in fees than was reasonable under the stipulated judgment. In other words, that Patricia was not entitled to a statutory fee award in addition to her contractual fee award.

C.    *The Trial Court Did Not Abuse Its Discretion in Denying Patricia's Request to Reinstate Monthly Spousal Support*

Patricia contends the trial court erred by denying her request to reinstate monthly spousal support because the undisputed evidence showed she was no longer cohabitating with Burnett and he was not contributing to her support. The governing legal standards and the terms of the parties' stipulated judgment do not support Patricia's argument.

A trial court may modify or terminate spousal support "at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a); see *In re Marriage of*

20

*Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1475 (*Khera & Sameer*).) "'A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order.'" (*Khera & Sameer*, at p. 1479.) Although the trial court may not modify spousal support without proof of a change in circumstances, the converse is not true. "'[A] showing of changed circumstances does not necessarily mandate a modification of spousal support.'" (*Id*. at p. 1484.) "'A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order.'"[6] (*Id*. at p. 1475.) The spouse seeking to modify support bears the burden to establish a material change in circumstances. (*Id*. at p. 1480.)

"'[I]n determining what constitutes a change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the agreement. [Citations.]' [Citations.] '[T]he trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement. The court may not simply reevaluate the spousal support award.'" (*Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1483; see *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398 (*Dietz*).)

---

[6] These criteria include (1) "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage," (2) "[t]he extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party," (3) "[t]he ability of the supporting party to pay spousal support," (4) "[t]he needs of each party based on the standard of living established during the marriage," (5) "[t]he obligations and assets, including the separate property, of each party," (6) "[t]he duration of the marriage," (7) "[t]he ability of the supported party to engage in gainful employment," (8) "[t]he age and health of the parties," (9) "[t]he balance of the hardships to each party," (10) "[t]he goal that the supported party shall be self-supporting within a reasonable period of time," and (11) "[a]ny other factors the court determines are just and equitable." (Fam. Code, § 4320.)

We review a trial court decision on a request to modify spousal support for an abuse of discretion. "'"So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."'" (*Dietz*, *supra*, 176 Cal.App.4th at p. 398.) We presume the court's decision is correct and the appealing party must affirmatively show error. (*Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1484.)

Here, the parties agreed in the stipulated judgment that Robert would pay Patricia $7,000 in monthly spousal support from October 1, 2004 until July 15, 2014. In August 2013, the trial court reduced the amount of monthly support to $4,500 based on Patricia's cohabitation with Burnett, and confirmed that Robert's obligation to pay monthly support would expire on July 15, 2014. After Robert's spousal support obligation expired, Patricia brought her motion to modify support by reinstating it despite the parties' agreement Robert would pay spousal support for 10 years only. The trial court denied Patricia's request, noting the parties' agreement and finding Patricia failed to establish any change in circumstances justifying a modification to either that agreement or the court's earlier order, which confirmed Robert's obligation to pay spousal support would expire after 10 years.

Patricia contends the undisputed evidence showed she no longer was living with Burnett, and therefore she established a change in circumstances. That purported change, however, did not require the court to reinstate support. Patricia fails to explain how her current living arrangements would allow the court to change the terms of the settlement agreement, which expressly terminated Robert's spousal support obligation after 10 years. The court relied on Patricia's cohabitation with Burnett to reduce the amount of support in 2013, but her cohabitation had no effect on the parties' agreement nearly 10 years earlier to terminate support in July 2014.

The effect of an agreement that one spouse will pay spousal support for a finite period "'is to tell each spouse that the supported spouse has a specified period of

22

time to become self-supporting, after which the obligation of the supporting spouse will cease." (*Khera & Sameer*, *supra*, 206 Cal.App.4th at p. 1477.) "'So long as the supported spouse has made reasonable efforts to become self-supporting, a change of circumstances may be in the form of "unrealized expectations" in the ability of the supported spouse to become self-supporting within a certain period of time. [Citations.] "[T]he question of reasonable expectations is material and a failure to realize them may constitute a change of circumstances justifying modification of the order."'" (*Ibid*.)

Patricia does not argue her unrealized expectations in becoming self-supporting constituted a material change in circumstances requiring the trial court to reinstate support. Rather, she solely relies on the cohabitation issue, and therefore fails to meet her burden to establish an abuse of discretion. Patricia's failure to address her unrealized expectations eliminates the need for us to address the evidence showing Robert had lost his job and also the evidence showing Patricia's efforts to become self-supporting by starting various businesses, such as the children's boutique and the pepper farm. We simply note, "a supported spouse cannot make unwise decisions which have the effect of preventing him or her from becoming self-supporting and expect the supporting spouse to pick up the tab." (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 812.)

D.      *Patricia Forfeited Her Due Process Challenges*

Finally, Patricia contends the trial court denied her due process and a fair hearing because (1) it cut off cross-examination of Robert on matters affecting his credibility, and then concluded Robert provided a convincing explanation the $98,000 he received from The Camden Group in December 2012 was not a bonus; and (2) it prevented her from presenting live testimony to support her attorney fee request. Patricia forfeited these constitutional challenges by failing to raise them in the trial court, and they nonetheless lack merit.

23

A party typically forfeits constitutional issues not raised in earlier civil proceedings. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 254.) A court may relax this rule to permit a party to raise "'a pure question of law which is presented on undisputed facts.'" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.) Only when the issue presented involves purely a legal question, on an uncontroverted record and requires no factual determinations, is it appropriate to address new theories. (*Palmer v. Shawback* (1993) 17 Cal.App.4th 296, 300.) "This forgiving approach has been most frequently invoked when 'important issues of public policy are at issue.'" (*Sea & Sage*, at p. 417.) Its application nevertheless "is largely a question of an appellate court's discretion." (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874.)

Here, Patricia failed to raise her due process objections in the trial court, and after Robert pointed out that failure and the forfeiture to which it gives rise, Patricia offered no explanation for that failure nor any reason for us to consider them for the first time on appeal. Indeed, Patricia's reply brief does not address these constitutional challenges at all. We therefore treat them as forfeited.

Moreover, these challenges lack merit. She claims the trial court prevented her from cross-examining Robert on issues affecting his credibility concerning the $98,000 bonus payment he received from The Camden Group in December 2012. The court's comments, however, reveal it did not prevent Patricia from cross-examining Robert to challenge his credibility. Rather, the court explained Robert's credibility on what he considered to be a bonus was not relevant because the court declared it would not determine what constituted a bonus based on the parties' subjective definitions. The court did not more broadly prevent Patricia from attacking Robert's credibility, and she made no effort to explain she purportedly sought to challenge Robert's credibility on when he received the bonus payment, not on how he defined a bonus. Patricia cites neither any authority nor evidence to establish this denied her due process.

24

Similarly, Patricia fails to present any evidence or authority to show the trial court denied her due process by receiving evidence regarding the amount of reasonable attorney fees through declarations rather than live testimony. The record shows the court stated it would grant Patricia's attorney fee request based on the evidence it received about the dispute over the support arrearages, and the court requested the parties to submit their evidence regarding the amount of that award through declarations.

To support her challenge to this procedure, Patricia cites *Elkins v. Superior Court* (2007) 41 Cal.4th 1337. In *Elkins*, the Supreme Court invalidated a local court rule that required parties in family law matters to present their evidence at trial through written declarations, and allowed live testimony only in exceptional circumstances. (*Id.* at p. 1344.) The Supreme Court, however, made clear that its ruling applied to trials (*id.* at p. 1354); it "does not affect hearings on motions" (*id.* at p. 1345, fn. 1). Here, the trial court was deciding a request for attorney fees in a postjudgment enforcement proceeding, not a trial.

III

DISPOSITION

The order is affirmed. Robert shall recover his costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of PATRICIA J. and ROBERT A. MINKIN. | |
| PATRICIA J. MINKIN, | G052947 |
| Appellant, | (Super. Ct. No. 02D009601) |
| v. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| ROBERT A. MINKIN, | |
| Respondent. | |

It is ordered that the opinion filed in the above-entitled matter on April 24, 2017, is hereby MODIFIED as follows:

1. On page 3, the second sentence of the second full paragraph, beginning with "Patricia stopped working," delete the words "to become a stay-at-home mom" so the sentence reads:

Patricia stopped working as a certified surgical technician after the couple's first child was born in 1983.

26

2. On page 4, the third sentence of the last paragraph, beginning with "Robert lost his position with Exempla," delete the comma after the words "January 2010" so the sentence reads:

Robert lost his position with Exempla in January 2010 when a new company purchased the hospital and replaced the management team.

3. On page 5, the first full sentence at the top of the page, beginning with "He did not pay her a percentage," delete the word "any" and replace it with the word "his," insert the word "components" between the words "compensation" and "because," and delete the words "did not consider his other compensation components qualified" and replace them with the words "concluded they did not qualify" so the sentence reads:

He did not pay her a percentage of his other compensation components because he concluded they did not qualify as an annual bonus under the stipulated judgment.

4. On page 5, the last sentence of the first full paragraph, beginning with "The next year, Patricia suffered," delete the entire sentence.

5. On page 5, the first sentence of the third full paragraph, beginning with "Shortly before he received," delete the dollar amount "$48,000" and replace it with the amount "$98,000" so the sentence reads:

Shortly before he received that additional $98,000 bonus, and after learning Patricia was cohabitating with Stan Burnett in a romantic relationship, Robert filed a request to terminate or reduce spousal support, including the additional support based on his bonuses.

6. On page 7, the second sentence of the second paragraph, beginning with "They agreed the payments," insert the words "with Robert's experts" between the words "They agreed" and "the payments" so the sentence reads:

27

They agreed with Robert's experts the payments Robert received under the senior management incentive plan were bonuses, but they disagreed that only a portion of the payments Robert received under the 457(f) long-term incentive plan were bonuses.

7. On page 8, the last sentence of the only full paragraph, beginning with "Finally, the court concluded," delete the word "portion" between the words "entitled to any" and "of the $98,000" so the sentence reads:

Finally, the court concluded Patricia was not entitled to any of the $98,000 Robert received from The Camden Group in December 2012 because she failed to show it constituted a bonus Robert received before the court terminated the additional spousal support.

8. On page 8, the second sentence in footnote 2, beginning with "The precise amount," delete the words "The precise amount," and delete the word "was" and replace it with the word "totaled" so the sentence reads:

Robert's combined overpayments totaled $30,308.

9. On page 16, fourth sentence of the first paragraph, beginning with "Moreover, the court's comments about this evidence," delete the words "fails to establish any error because they" so the sentence reads:

Moreover, the court's comments about this evidence are consistent with the rule of contract interpretation that the parties' expressed objective intent governs, not their unexpressed subjective understanding.

10. On page 16, last sentence of the first paragraph, beginning with "Patricia's testimony about her understanding," delete the word "fairly" so the sentence reads:

Patricia's testimony about her understanding of the term may be viewed as her unexpressed subjective intent rather than the parties' expressed objective intent.

28

11. On page 16, the fifth sentence of the second paragraph, beginning with "The trial court received and acknowledged this evidence," delete the word "testimony" between the words "Robert's" and "during the hearing" and replace it with the word "explanation" so the sentence reads:

> The trial court received and acknowledged this evidence, but expressly gave it little, if any, weight based on Robert's explanation during the hearing.

12. On page 18, the first sentence of the first full paragraph, beginning with "Whether an award of attorney fees," delete the word "a" between the words "is based on" and "statutory or contractual" so the sentence reads:

> Whether an award of attorney fees is based on statutory or contractual provisions, "'[t]he trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles.'"

13. On page 18, the first set of citations in the second full paragraph, beginning with "(*PLCM*, at p. 1095," insert "*supra*, 22 Cal.4th" between "*PLCM*," and "at p. 1095" and insert "*supra*, 226 Cal.App.4th," between "*Hill*," and "at p. 1196" so the citations read:

> (*PLCM*, *supra*, 22 Cal.4th at p. 1095; *Hill*, *supra*, 226 Cal.App.4th at p. 1196 ["'We will reverse a fee award only if there has been a manifest abuse of discretion'"].)

14. On page 18, the third sentence of the last paragraph, beginning with "The foregoing authorities demonstrate," delete the words "what amounts to" and replace them with the words "the precise amount of" so the sentence reads:

> The foregoing authorities demonstrate the trial court is vested with broad discretion to determine the precise amount of reasonable attorney fees even

29

when the parties agree the prevailing party is entitled to recover his or her fees and costs.

15. On page 19, the second sentence of the first full paragraph, beginning with "Although the court awarding," delete the words "the court" at the start of the sentence so it reads:

Although awarding the exact amount of overpayment may be evidence the trial court abused its discretion, it is not enough to overcome the presumption in favor of the court's decision and establish an abuse of discretion as a matter of law.

16. On page 19, the last sentence of the first full paragraph, beginning with "Indeed, even though the two amounts match," delete the word "Indeed" at the start of the sentence and capitalize the word "even" so the sentence reads:

Even though the two amounts match, that alone does not mean the fee amount was not reasonable based on the surrounding circumstances.

17. On page 20, the fifth sentence of the second paragraph, beginning with "Moreover, a fair reading of the court's decision," delete the words "lacked of access to" and replace them with the words "shortage of" so the sentence reads:

Moreover, a fair reading of the court's decision shows it concluded Patricia's purported shortage of funds did not justify awarding her more in fees than was reasonable under the stipulated judgment.

18. On page 24, the fifth sentence of the last paragraph, beginning with "The court did not more broadly prevent," delete the word "she" between the words "credibility, and" and "made no effort" and replace it with the word "Patricia" so the sentence reads:

The court did not more broadly prevent Patricia from attacking Robert's credibility, and Patricia made no effort to explain she purportedly sought to

30

challenge Robert's credibility on when he received the bonus payment, not on how he defined a bonus.

These modifications do not change the judgment.

The Association of Certified Family Law Specialists has requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

31