Filed 1/12/26  Bauer v. Bauer CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JENNIFER BAUER,<br><br>    Respondent,<br><br>v.<br><br>KEVIN BAUER,<br><br>    Appellant. | 2d Civ. No. B341078<br>(Cons. with B343541)<br>(Super. Ct. No. D396761)<br>(Ventura County) |

Appellant Kevin Bauer and respondent Jennifer Bauer signed a stipulated judgment of dissolution in 2021.  They agreed Kevin would pay fixed monthly child and spousal support to Jennifer, supplemented by a pre-agreed percentage of his bonus compensation calculated using an *Ostler-Smith* table attached to the judgment.  In 2024 a dispute arose over Kevin's *Ostler-Smith* payments.  This appeal follows two post-judgment orders awarding Jennifer arrears and modifying Kevin's prospective spousal and child support obligations.

We will reverse the orders in part. The family court erred by including post-judgment increases to Kevin's base salary when calculating his *Ostler-Smith* arrears. Any order regarding his prospective spousal and child support obligations should confirm this income is not subject to division. We will remand the case with directions to reduce the arrears award and to recalculate Kevin's support obligations consistently with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Kevin and Jennifer[1] separated in 2019 after nearly 20 years of marriage. They have one minor daughter. Kevin works in the facilities department of a large pharmaceutical company. Jennifer is a school teacher.

The family court entered a stipulated judgment in October of 2021 (judgment) dividing the couple's marital assets. This included, among other things, the proceeds from the sale of their house (about $426,000), their employment retirement accounts, corporate stocks, as well as several IRAs and investment accounts totaling about $400,000. The judgment set Kevin's monthly child support at $366 and spousal support at $400. These figures were derived from an attached DissoMaster report titled "DissoMaster Report 2021 Monthly" that included their wages and salary, custodial time share, and other financial information etc. used to calculate support.[2]

---

[1] We refer to the parties by their first names for ease of reference.

[2] "DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1578, fn. 4.)

The judgment included a variable *Ostler-Smith*[3] component requiring Kevin to pay additional spousal and child support as follows: "[Kevin] shall pay to [Jennifer] a percentage of his compensation in excess of [Kevin's] base salary of $12,989 per month and shall be paid . . . within seven (7) business days of receipt and shall be accompanied by all paystubs or other documentation evidencing such additional compensation. The percentage payable shall be pursuant to the DissoMaster report attached hereto as **EXHIBIT 'A'** and incorporated herein by reference labelled for reference only as 'Kevin Annual Bonus Wages Report'. The spousal support set forth herein is based upon all of the financial circumstances set forth in each party's Schedule of Assets and Debts, their respective incomes and the financial circumstances set forth in the DissoMaster report attached hereto, including the payment of child support by [Kevin] to [Jennifer]."

The child support provision was almost identical: "As additional child support, [Kevin] shall pay to [Jennifer] a percentage of his compensation in excess of [Kevin's] base salary of $12,989 per month, payable within seven (7) business days of his receipt of same. The child support set forth and the percentage of additional child support is pursuant to the financial circumstances and bonus table set forth in the DissoMaster

---

[3] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler-Smith*), held that spousal and child support awards may include both a percentage of the supporting spouse's wages and a percentage of the income he or she receives in the form of bonuses, dividends and other types of discretionary compensation.

printout attached hereto as **Exhibit 'A'** and incorporated herein by reference."

The "Kevin Annual Bonus Wages Report 2021 Yearly" (bonus table) includes a two-page worksheet with several columns. The first column is titled "Kevin's Gross Bonus" and runs downward in $1,000 increments from $1,000 to $60,000. The table includes additional columns the parties use to calculate how much of the bonus Kevin must pay toward child and spousal support that year. On the low end (a $1,000 bonus), Kevin must pay 8.02 percent (i.e., $80) toward child support and 21.29 percent (i.e., $213) toward spousal support. On the high end (a $60,000 bonus), he must pay 7.19 percent ($4,315) toward child support and 20.50 percent ($12,298) toward spousal support. The table includes additional columns that specify the total support due from Kevin when combined with his "fixed" or regular monthly payment.

Two years after signing the stipulated judgment, Jennifer learned Kevin's income had increased to about $19,700 per month. She retained a new attorney. The attorney sent a letter expressing concern that Kevin's actual income was "not accurately represented in [the] Judgment." The letter asserted Jennifer was entitled to a percentage of any compensation above $12,989 per month. It directed Kevin to "make a fee contribution to my firm in the sum of $10,000" and to provide various wage and salary information for the prior three years.

Kevin responded that the judgment accurately reflected his 2021 base salary ($155,866, i.e., $12,989 per month). He had since received two base salary increases: to $161,633 in 2022, and to $204,212 in 2023 when he received a promotion. Kevin explained the figure of $19,700 included bonus income. He sent

4

documents showing he made *Ostler-Smith* payments on his bonus income to Jennifer in 2022 and 2023. He also sent his paystubs for 2021, 2022, and 2023.

Jennifer filed a request for order (RFO) increasing spousal and child support in January of 2024. She did not serve the RFO on Kevin or disclose she had filed it. The supporting documents did not refer to arrears for past due support.

Jennifer served the RFO in April of 2024 along with a supporting declaration. She acknowledged Kevin was current on the fixed component of spousal support (i.e., $400 per month) and child support (i.e., $366 per month) but argued he had underpaid the *Ostler-Smith* payments in 2022 and 2023 by omitting from the calculation base salary increases and parts of his gross pay. Jennifer filed the declaration of a forensic accountant who calculated Kevin's arrears as exceeding $50,000. The accountant cited the judgment's directive that Kevin pay "a percentage of his compensation in excess of [his] base salary of $12,989 per month," which she interpreted as the difference between $155,868 (i.e., $12,989 annualized) and the gross wages reflected on his W-2 forms for 2022 and 2023 ($235,029 and $326,494, respectively). Jennifer requested the court modify spousal and guideline child support based upon Kevin's current income. She sought arrears for 2022 and 2023.

Kevin consented to a guideline modification of child support but opposed increasing spousal support. He requested the family court terminate spousal support because Jennifer could now support herself financially. He objected to the court deciding the issue of arrears because Jennifer did not request or itemize them on the required judicial council form.

5

The parties appeared before the family court on June 18, 2024. After argument, the court found as follows: "There's a long-term marriage. There was a negotiated settlement. So spousal support remains as previously set. With regards to a request to increase spousal support, that request is [also] respectfully denied." The court increased the fixed component of child support from $400 to $591 based on a guideline calculation reflecting both parties' higher salaries. It stated the following on the variable *Ostler-Smith* component for both spousal and child support: "Now, the parties negotiated a settlement that had a specific base salary in the judgment. But the reality is his base pay has gone up, and so the *Ostler-Smith* shall apply to anything above his normal base salary. And now that's $17,655."

The court denied Jennifer's request for attorney's fees as "excessive" and "unjustified." It deferred ruling on the issue of arrears so Jennifer could properly plead the issue.

The court's written order, filed July 29, 2024, ordered Kevin to pay child support of $591 per month "subject to an *Ostler-Smith* table for anything above [Kevin's] normal base salary of $17,655 per month and referred to an attached DissoMaster Report. The order stated that Jennifer's request to modify spousal support was denied, but then it stated "[s]pousal support remains as previously ordered and is subject to an *Ostler-Smith* table for anything above [Kevin's] normal base salary of $17,655 per month." (July 29 order).

Jennifer filed a second RFO seeking: (1) $10,774 plus interest for child and spousal support arrears in 2022; (2) $37,750 plus interest for child and spousal support arrears in 2023; (3) $25,000 in attorney's fees; and (4) $10,000 paid to her forensic accountant, though she attested to only having paid $5,000 to

6

date.  Kevin filed a separate RFO asking the court to reconsider and clarify his support obligations—specifically, whether increases to his base salary were included in the *Ostler-Smith* calculation.  He understood it would apply only to his annual bonuses and that he did not intend to allow Jennifer's spousal support to automatically increase without considering her own pay increases.

The family court held a hearing in September of 2024.  It awarded Jennifer the arrears sought, as well as $10,000 in attorney's fees and $7,500 in costs pursuant to Family Code sections 271 and 2030.[4]  It reasoned: "[Kevin] signed off on a judgment that stated that anything above said base salary, and then it included what that base salary was.  It says what it says.  It was negotiated and signed off on.  People are free to enter into crappy agreements or poorly drafted agreements or agreements that they later find were not as good as they might have preferred.  This is the agreement your client signed off on.  It might not even be the agreement that the Court would have said is a good agreement, but it says what it says.  It says anything above a specific amount is subject to an *Ostler-Smith*.  It says what it says.  There is nothing ambiguous about it, which I think the Court said last time, and the Court has said it again."  The family court entered a written order on October 23, 2024 (October 23 order).[5]

---

[4] Undesignated statutory references are to the Family Code.

[5] Kevin first appealed the July 29 written order and the September 4 oral ruling (no. B341078).  He later appealed the October 23 order (no. B343541).  We consolidated the appeals for briefing, oral argument, and disposition pursuant to stipulation.

DISCUSSION

Kevin contends the family court misinterpreted the judgment by treating post-judgment increases to his base salary as *Ostler-Smith* income subject to division with Jennifer. He requests we reduce the spousal and child support arrears award, remand for an evidentiary hearing to determine his 2022 and 2023 income, and clarify that prospective *Ostler-Smith* calculations will not include base salary increases nor unvested stock compensation. He also challenges the retroactive date of the family court's child support modification and the awarding of expert costs to Jennifer that are not yet incurred.

*Kevin's Base Salary Increases Are Not Subject*
*To Division Under* Ostler-Smith

We interpret the terms of a marital settlement agreement incorporated into a stipulated judgment under the general rules governing the interpretation of contracts. (*In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 399.) "Where no extrinsic evidence is introduced, or the extrinsic evidence is not in conflict, we independently construe the agreement. [Citation.]" (*Ibid.*) We construe the contract as a whole, interpreting all provisions together to give effect to all, if reasonably possible or practicable. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473.) "A contract must, if possible, be given a reasonable rather than an unreasonable construction." (*Broome v. Broome* (1951) 104 Cal.App.2d 148, 157.)

We agree the family court misinterpreted the judgment. It focused on just one phrase: "Respondent shall pay to Petitioner a percentage of his compensation in excess of Respondent's base salary of $12,989 per month . . . ." Placing this phrase in context, however, shows the parties intended "Exhibit 'A'" to apply only to

8

fluctuating bonus-type income received by Kevin and not to increases to his base salary.

Both parties refer to the bonus table as an "*Ostler-Smith*" schedule. The purpose of an *Ostler-Smith* calculation "is to capture fluctuations in the supporting spouse's income that are not included in a flat rate amount of support." (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949 (*Minkin*); see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2025) § 6:187.1 ["There also is a 'Bonus Schedule' in [DissoMaster] that can assure an accurate support calculation when a party has irregular or fluctuating income (e.g., bonuses, overtime, stock options, etc.)"].) "Case law justifies an [*Ostler-Smith*] award 'on the ground that future bonuses are not guaranteed, and it would be unfair to require the obligor to file motions for modification every time a bonus is reduced [or denied].'" (*Minkin*, at p. 949.)

The stipulated judgment contemplates a one-time, annual calculation of Kevin's additional child and spousal support obligation added to the fixed monthly support obligations. The additional obligations are based on the DissoMaster report attached to the judgment as "Exhibit 'A.'" The report clearly differentiates between salary and bonus income. Page one is titled "DissoMaster Report 2021 Monthly" and lists both parties' "Wages + salary." It sets monthly guideline child support of $366 and spousal support of $400. The attached bonus table, in contrast, is titled "Kevin *Annual Bonus* Wages Report 2021 *Yearly*." (Italics added.) It defines support as percentages of "[b]onus paid as additional . . . [s]upport." This shows the parties "intended the annual bonus phrase to refer to a fluctuating, discretionary payment [Kevin] received from his employer based

9

on performance, not more broadly to all payments he received above base salary." (*Minkin, supra,* 11 Cal.App.5th at p. 949.) Conflating monthly "salary" with yearly "bonus wages" ignores the plain text of the report.

In addition, the judgment requires Kevin to pay his *Ostler-Smith* obligation "within seven (7) business days" of receiving bonus wages. Treating base salary increases as bonus wages, it follows, will require Kevin to re-calculate his support obligations *after receiving every paycheck*. Jennifer's RFO and the family court orders all ignored this peculiar outcome. Jennifer calculated arrears and interest based on a single, annual *Ostler-Smith* payment due on January 1—not multiple payments throughout the year. As Jennifer conceded in oral argument, the court's interpretation incentivizes Kevin to seek modification whenever his base salary increases so he can reduce the amount of pay subject to the *Ostler-Smith* table.[6]

The parties negotiated Kevin's support obligations based on their financial circumstances at the time of settlement. The judgment states, "[t]he spousal support set forth herein is based upon all of the financial circumstances set forth in each party's Schedule of Assets and Debts, their respective incomes and *the financial circumstances set forth in the DissoMaster* [*Report*] attached hereto . . . ." (Italics added.) It similarly states, "[t]he child support set forth and the percentage of additional child support is *pursuant to the financial circumstances and bonus*

---

[6] This is, in fact, what the family court did after the June 18 hearing. Although the court said it denied Jennifer's request to modify spousal support, its July 29 order reflected Kevin's base pay increase (i.e., $17,655) and ordered him to pay an *Ostler-Smith* percentage on "anything above" that amount.

10

*table set forth in the DissoMaster* [*Report*] attached hereto . . . ." (Italics added.) Considering Kevin's base salary increases but not Jennifer's would run afoul of the judgment's admonition to interpret its terms "simply and fairly, and not strictly for or against either of the parties." The court's interpretation incentivizing future modification requests would contradict the judgment's stated intent "to resolve all rights and obligations relating to spousal support." It would also build perpetual nonguideline child support into the judgment—an issue we discuss in more detail below.

*Support Arrears Award*

As we have stated, the family court misinterpreted the judgment when calculating child and spousal support arrears by applying an *Ostler-Smith* to Kevin's regular salary increases. Accordingly, it must reverse the order and recalculate arrears for 2022 and 2023 on remand. The court must also determine what should be included in Kevin's compensation. Kevin acknowledges the judgment's *Ostler-Smith* provision applies to vested stock options and other forms of non-salary compensation available to pay support. He argues it does not apply to "phantom" W-2 income like non-vested stock options. We leave the family court to resolve what compensation was available to Kevin to pay support in those years. (See *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 518 (*Macilwaine*) [section 4058, subdivision (a)(1) "must be construed to include all compensation that has been conferred upon and is available to the employee"].)

*Prospective Child Support*

Jennifer contends the July 29 child support order is guideline but also argues the court was required to follow the parties' non-guideline method of calculating of support, i.e., by

11

including all Kevin's base salary increases but not her's. We need not reconcile these seemingly contradictory assertions. Jennifer forfeited any claim to non-guideline support when she consented to guideline support in the family court. Moreover, no language in the judgment suggests the parties intended child support (or future modifications to support) to be non-guideline.

Jennifer's first RFO sought guideline child support based on their current financial information. Kevin consented to this. A modification to child support that considered Kevin's base salary increases but not Jennifer's would not be guideline. A court deviating from guideline child support must "state, in writing or on the record" the reasons for the deviation and why the ordered support is "consistent with the best interests of the children." (§ 4056, subd. (a), (a)(2) & (3).) The family court made no such findings here. The July 29 order set a base amount of child support and ordered Kevin to pay additional support "subject to an *Ostler-Smith* table for anything above [Kevin's] normal base salary of $17,655 per month." An updated DissoMaster report is attached to the order. The report calculates monthly child support as $591 based on both Kevin's and Jennifer's current monthly base salaries. An updated bonus table (titled "Kevin Annual Bonus Wages Report 2024 Yearly") is attached as well. We affirm this part of the order as "adher[ing] to the statewide uniform guideline." (§ 4052.) As with spousal support, we leave the family court to resolve any disputes over what types of non-salary compensation to include in future *Ostler-Smith* calculations.

*Retroactive Child Support Award*

Kevin does not challenge the order increasing his monthly child support payment from $400 to $591 but contends the family

court erred by dating the increase retroactively to February 1, 2024.  He argues the appropriate date is when Jennifer served her RFO seeking the increase, i.e., April 19, 2024.  (§ 3653, subd. (a).)  Jennifer concedes the issue.  We will reverse the order in this respect and direct the family court to modify the retroactive date on remand.

*Costs Award*

Kevin contends the family court abused its discretion when it awarded Jennifer $7,500 in costs because her supporting documents showed she incurred only $5,000 in costs.  Kevin forfeited the issue by not raising it below.  (See *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144 ["errors must be brought to the trial court's attention at the trial level while the error can still be expeditiously corrected"].)

DISPOSITION

The July 29 and October 23 orders after judgment are vacated.  We direct the court to re-calculate Kevin's child and spousal support arrears for 2022 and 2023 on remand.  It shall omit Kevin's post-judgment base salary increases from bonus income when calculating his *Ostler-Smith* arrears, but may include other forms of non-salary compensation, e.g., vested stock options, consistent with *Macilwaine*.

The family court shall order spousal support consistent with the parties' stipulated judgment and shall order prospective guideline child support. For both spousal and child support it shall omit Kevin's post-judgment base salary increases from bonus income subject to the *Ostler-Smith* table but it may include other forms of non-salary compensation consistent with *Macilwaine*.

13

It shall modify the retroactive date of its prior award of guideline child support to April 19, 2024.

Either party may request a hearing on remand to present evidence and argument as to these issues. The orders are otherwise affirmed. Appellant shall recover his costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

14

Michael S. Lief, Judge

Superior Court County of Ventura

_____

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar, for Appellant.

Taub & Taub, Richard F. Taub, for Respondent.