Filed 9/19/22  Marriage of Dashtipour and Jenabi CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of BEHNAM DASHTIPOUR and MAHSHAD JENABI. | D079442, D079760 |
| BEHNAM DASHTIPOUR, | |
| Appellant, | (Super. Ct. No. 17FL005140C) |
| v. | |
| MAHSHAD JENABI, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel S. Belsky, Judge. Affirmed.

Law Office of Dennis Temko and Dennis Temko, for Appellant.

Bickford Blado & Botros and Andrew J. Botros, for Respondent.

Behnam Dashtipour (Husband) and Mahshad Jenabi (Wife) entered into a marital settlement agreement (MSA), which was incorporated into a final judgment of dissolution in 2018. The MSA requires Husband to pay Wife $950 per month in child support, plus "50.00% of the net bonus and/or commission income he receives within ten (10) days of receipt" as additional

child support. In 2021, Wife asked the family court to clarify that the word "bonus" in the latter provision included Husband's stock-based employment compensation from Qualcomm known as restricted stock units (RSUs), and she also sought child support arrears from Husband. After considering extrinsic evidence regarding the parties' intended meaning of the word "bonus," the court granted Wife's requests and found that Husband owed Wife $82,539.15 in child support arrears for the RSUs.

Husband appeals, arguing that: (1) the MSA's child support provision is void as against public policy; or alternatively, (2) the court erred in considering extrinsic evidence; (3) to the extent the court could consider extrinsic evidence, that evidence supported Husband's interpretation of "bonus" as excluding RSUs; and (4) even if Husband does owe additional child support from RSUs, the court erred in calculating the arrears amount. We conclude that the child support provision is not void, that the trial court properly considered extrinsic evidence, and that substantial evidence supported the court's findings. Accordingly, we affirm the trial court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Marital Settlement Agreement*

Husband and Wife married in March 2000 and separated in March 2017. In early 2018, the parties memorialized the terms of their divorce in the MSA, which was incorporated into a May 17, 2018 judgment of dissolution. They had two sons during their marriage who were both minors at the time of the divorce.

The MSA provides for joint legal and physical custody of the children. For child support, section 12.A of the MSA provides that Husband shall pay Wife "$950.00 per month, allocated as $200.00 for [minor child] and $750.00

2

for [other minor child]."[1]  Section 12.B provides that Husband shall pay Wife "50.00% of the net bonus and/or commission income he receives within ten (10) days of receipt" as additional child support.[2]  The parties acknowledged that the percentage allocations of Husband's bonus were California Statewide Uniform Child Support Guideline (Fam. Code, § 4050 et seq.; hereinafter referred to as "guideline"),[3] which "governs the minimum amount of child support payable by one party to the other."  In section 12.D, the parties "agree[d] that the foregoing provisions regarding child support are above the

---

[1]    Section 12.A of the MSA states in full:  "Husband shall pay to Wife, as and for the support of the minor children of the parties, namely [minor child] and [other minor child], the total sum of *$950.00 per month, allocated as $200.00 for [minor child] and $750.00 for [other minor child]*.  Child support payments shall be paid in advance and shall commence on the first day of the first month immediately following Wife's relocation from the parties' residence and continue on the first day of each month thereafter.  At the time of Wife's relocation on August 1, 2017, Husband shall, as and for child support attributable to the period of April l, 2017 to June 30, 2017, pay to Wife a one-time payment in the amount of $2,850.00."  (Italics added.)

[2]    Section 12.B of the MSA states in full:  "As additional child support, Husband shall pay to Wife an amount equivalent to *50.00% of the net bonus and/or commission income he receives within ten (10) days of receipt*.  Husband shall provide written documentation of the bonus income or commission income with the payment.  The parties expressly agree the foregoing bonus/commission income as and for additional child support shall be allocated as 15.00% to [minor child] and 35.00% to [other minor child].  The parties agree and acknowledge the foregoing allocations of Husband's bonus and/or commission income are *California Statewide Uniform Child Support Guideline* which *governs the minimum amount of child support payable by one party to the other*."  (Italics added.)

[3]    Further statutory references are to the Family Code unless otherwise indicated.

[guideline]" as calculated in "Exhibit 'B,' "[4] and that based upon the factors in existence at the time the MSA was negotiated, the guideline amount of child support payable by Husband to Wife was $704 per month.[5]

In section 16 of the MSA entitled "Child Support Standards Act (Mandatory Guidelines)," the parties acknowledged that they were "fully informed of their rights" as set forth in the guidelines; the MSA's child support provisions are "in the best interests of the minor child"; the provisions were agreed to "freely, without threat or duress"; the parties have "agreed to an amount which is above" the guideline; and the right to support has not been assigned to any county and no application for public assistance is pending.

---

[4]     "Exhibit 'B' " is a DissoMaster report attached to the MSA which was based on Husband having a gross monthly income of $15,750 and wife having a gross monthly income of $9,634.

[5]     Section 12.D of the MSA states in full:  "The parties *agree that the foregoing provisions regarding child support are above the* [*guideline*] which governs the minimum amount of child support payable by one party to the other.  Based upon the factors detailed below and in existence at the time this Agreement was negotiated, the [guideline] amount payable by Husband to Wife would be $704.00 per month, with $250.00 allocated for [minor child] and $455.00 allocated for [other minor child].  A copy of the DissoMaster child support calculation is attached hereto as Exhibit 'B.'  The guideline calculation, as set forth herein, is based upon the following findings:  [¶] (1) Husband's parenting timeshare of 49.99% of one child and 50.01% of the other child, gross monthly income of $15,750.00, monthly deductions of $230.00 for unreimbursed medical expenses, and tax filing status of Head of Household with two (2) exemptions.  [¶]  (2) Wife's parenting timeshare of 49.99% of one child and 50.01% of the other child, gross monthly income of $9,634.00, monthly deductions of $300.00 for unreimbursed medical expenses, and tax filing status of Head of Household with two (2) exemptions."  (Italics added.)

4

As for spousal support, section 19 of the MSA provides that Husband shall pay $650 per month to Wife. The parties also agreed that while Husband was still obligated to pay child support for both children, "Husband's receipt of any bonus or commission income [would] not be categorized as income available for spousal support . . . , as the parties have specifically negotiated and allocated said income as and for additional child support."

Regarding division of property, section 29 of the MSA provides that "[d]uring the marriage and prior to the date of separation, the community obtained an interest in Qualcomm [RSUs] as a result of both parties' employment with Qualcomm, Inc." The parties agreed to divide equally the community interest in the RSUs granted before the date of separation, and the MSA detailed the tax consequences of the parties' exercising their stock options or units.

The judgment included Judicial Council Form FL-342, "Child Support Information and Order Attachment," requiring that child support payments begin on April 4, 2017. The form also indicated that the order "does not meet the child support guideline set forth in Family Code section 4055" and made reference to another attached form entitled "Non-Guideline Child Support Findings Attachment," Judicial Council Form FL-342(A). On that form, the court noted that the child support agreed to by the parties was above the guideline amount, which would have been $704 per month. The court made the following further findings as "required by Family Code sections 4056, 4057, and 4065": "The parties have been fully informed of their rights concerning child support. Neither party is acting out of duress or coercion. Neither party is receiving public assistance and no application for public assistance is pending. The needs of the children will be adequately met by

5

this agreed-upon amount of child support. If the order is below the guideline, no change of circumstances will be required to modify this order. If the order is above the guideline, a change of circumstances will be required to modify the order."

B. *Wife's Request for Orders*

In December 2017, rather than paying Wife 50 percent of the net post-tax cash bonus he received at the end of the year, Husband deducted Wife's cash bonus amount from his cash bonus amount, then paid 50 percent of the difference. Wife also expected to receive 50 percent of the post-tax value of Husband's RSUs from Qualcomm, but he never paid those amounts. Disputes arose between the parties regarding these issues and the proper interpretation of the MSA's child support provisions.

In February 2021, Wife requested an order seeking clarification that "bonus" in the MSA's child support provision should include Husband's RSUs. Wife also made a request for child support arrears based on the value of Husband's RSUs that vested after April 2017. Wife submitted a declaration, points and authorities, and exhibits in support of her requests. After Husband filed a declaration in response, Wife submitted a reply declaration attaching additional documentation.

During a May 2021 hearing on the request for clarification, Wife argued that there is no ambiguity in the MSA because the Merriam-Webster definition of the word " 'bonus' " is " '[s]omething in addition to what is expected or strictly due,' " and that "stock" is included in the definition as an example. Wife further argued that there was no ambiguity in the agreement because both parties knew about RSUs at the time they entered the MSA.

Alternatively, Wife contended that if the court did find ambiguity in the MSA, then extrinsic evidence supports her interpretation of "bonus."

6

Specifically, Wife pointed to e-mails from early 2018 where Husband referred to the fact that Wife was "already getting %50 [*sic*] of my bonus and [stock] and child support" and that "stock and bonus is at 50%" to argue that he understood stocks to be part of child support. Wife argued that because the RSUs fluctuate in value, they were not included in the guideline calculations alongside Husband's base salary as income, but rather as part of his bonus.

Husband also argued there is no ambiguity in the MSA. However, he asserted that the parties intended to keep RSUs separate from "bonuses and commissions" as evidenced by the MSA's separate section defining and dividing RSUs granted before separation as community property. He argued that neither party's RSUs were included in the child support guideline calculations because they were intended to be kept separate. He also argued that the same e-mails Wife relied upon actually supported his position because he wrote " 'stock and bonuses' " separately, as opposed to " 'stock bonuses.' "

Before hearing argument, the court noted that stock options "can become income when they are exercised, when they are sold, or when all restrictions are removed from exercising or selling them, even if they are not exercised or sold." The court cited *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 532 (*Macilwaine*), which held that once restrictions on exercise and sale are removed, stock options are not materially distinguishable from salary voluntarily deferred and should be included as income for support purposes.

The court then noted that it would need to "examine the circumstances under which the parties negotiated and entered into" the MSA to "give effect to the mutual intention of the parties[.]" After considering the e-mails, the dictionary definition of "bonus," party declarations, and oral arguments, the

7

court found that "the parties' intent was to consider the RSUs Husband receives" after the date of separation "as bonus income to be used for calculation of child support." The court distinguished section 29 of the MSA defining and dividing RSUs because it dealt with property as of the date of separation.

At a subsequent hearing in September 2021 to address Wife's request for child support arrears, Husband argued that an accurate arrears determination could not be made without a forensic accountant because the MSA calls for him to pay 50 percent of the "net" bonus received, and additional taxes might be owed on the RSUs depending on how much Qualcomm withheld.

Wife argued that because Qualcomm withholds taxes on the RSUs when they are released, the "net" value is the amount Husband received at vesting. Wife further contended that since the MSA dictates that Husband's additional child support payment is due to Wife within 10 days of receipt, no "true-up" requirement for end-of-year tax consequences should apply.

In addition to amounts owed for a cash bonus and vacation time, the court found that Husband owed Wife $82,539.15 in child support arrears for the RSUs. In reaching that conclusion, the court relied on Wife's calculation of the post-tax value of Husbands' RSUs on their vesting dates between November 2018 and May 2021. The court noted that Husband had ample time since the May 2021 hearing to consult an accountant and gather information about potential additional tax consequences to controvert Wife's evidence, but in the absence of that information, the court found that Wife met her burden of proof in showing the amount of arrears owed.

8

Husband separately appealed the trial court's order interpreting the MSA and its subsequent order determining the arrearage. On joint motion of the parties, we consolidated the appeals.

DISCUSSION

I

For the first time on appeal, Husband argues that the parties' child support agreement (which he agreed to as part of the MSA) is void as against public policy because it limited the children's right to support from Wife. We disagree.

As noted, the child support agreement was part of the MSA, which was incorporated into the final judgment of dissolution entered May 17, 2018. We construe Husband's argument as a claim that the child support portion of the final judgment is void as against public policy. A judgment that is void on the face of the record is subject to either direct or collateral attack at any time. (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327.) A judgment will also be treated as void on its face if the parties admit facts showing that it is void or allow such facts to be established without opposition. (*Id*. at p. 1328.) Although the time to appeal from the dissolution judgment has long passed, we must consider the merits of Husband's argument that its child support provision is void on its face.

Husband's public policy argument is based on his contention that the additional child support portion of the judgment was not guideline because the parties omitted Wife's cash and RSU bonuses from the guideline calculation. According to Husband, this "abridged the children's right to support from their mother, contravening the public policy [that] both parents are mutually responsible for the support of their children."

9

Husband's argument is unpersuasive. This is not a case like those cited by Husband, in which the parties by their agreement forever waived or limited a child's right to support from one parent. (See, e.g., *Kristine M. v. David P.* (2006) 135 Cal.App.4th 783, 788-792 [finding that parents' agreement to terminate father's parental rights and permanently end his obligation to pay child support was void as against public policy].) In this case, the parties recognized Wife's support obligation by factoring her gross income into the guideline calculation, and the judgment did not deprive the court of its authority to modify child support or order Wife to pay child support at any time in the future. (§ 3651.)

California law imposes child support duties on both parents, but the guideline formula "calculates a *single* sum owed by one parent to the other." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1161; see also § 4055, subd. (b)(5) [guideline formula results in payment of child support from higher earner to lower earner or vice versa].) This formula accounts for both parties' support obligations by factoring each of their gross incomes into the calculation, but it "does not place a monetary figure on each parents' support duty." (*Drake*, at p. 1161.) The parties here considered both parents' gross income in determining child support, and their agreement did not purport to relieve Wife of her support obligations. Thus, the child support provision of the judgment is not void as against public policy under the cases cited by Husband.

Husband claims that because the parties excluded Wife's bonus income from the guideline calculation, the amount of child support in the MSA was below guideline, even though the parties stipulated that it was above guideline. But even assuming this is so (which Husband has not actually shown), Husband cites no authority that it would render the parties' child

10

support agreement void as against public policy. The guideline formula is only a rebuttable presumption as to the correct amount of child support. (§ 4057, subds. (a) & (b).) Under section 4065, subdivision (a), the parties may stipulate to a child support amount above or below the guideline formula.[6] A stipulated support agreement is one of the factors that may be used to justify a departure from the guideline formula. (§ 4057, subd. (b)(1).) "Indeed, stipulated child support is entirely consistent with the underlying guideline objectives, which are 'to encourage fair and efficient settlements of conflicts between parents and . . . to minimize the need for litigation.' " (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1013, citing § 4053, subd. (j).)

Husband further argues that the trial court failed to make the findings required by section 4056, subdivision (a), for departing from the guideline

---

[6]    Section 4065, subdivision (a), provides: "Unless prohibited by applicable federal law, the parties may stipulate to a child support amount subject to approval of the court. However, the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount. [¶] (5) The right to support has not been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending."

11

formula.[7]  But the judgment included Form FL-342(A), a "Non-Guideline Child Support Findings Attachment."  On this form, the court made the findings for a non-guideline order "required by Family Code sections 4056, 4057, and 4065."  Husband has not made any substantive argument why these findings were deficient, nor has he cited any authority supporting the proposition that deficient section 4056 findings would render this portion of the judgment void as against public policy.  If a judgment is simply erroneous, rather than void, it is not subject to collateral attack, even if the error appears on the face of the judgment or record.  (*Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 840.)  Thus, we conclude that the child support provisions of the judgment are not void on their face.

## II

Husband argues in the alternative that the court erred by considering extrinsic evidence to determine the parties' intended meaning of "bonus."  He further contends that to the extent it was permissible for the court to consider extrinsic evidence, it supported his argument that the parties did not intend "bonus" to include RSUs.

A. *Standard of Review*

When construing a term in a judgment of dissolution that incorporates an agreement between the parties, the court applies the general rules governing the interpretation of contracts.  (*In re Marriage of Minkin* (2017)

---

[7]  Section 4056, subdivision (a), provides:  "To comply with federal law, the court shall state, in writing or on the record, the following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article:  [¶]  (1) The amount of support that would have been ordered under the guideline formula.  [¶]  (2) The reasons the amount of support ordered differs from the guideline formula amounts.  [¶]  (3) The reasons the amount of support ordered is consistent with the best interests of the children."

12

11 Cal.App.5th 939, 948 (*Minkin*).)  The primary objective is to give effect to the mutual intentions of the parties.  (*Ibid.*; Civ. Code, § 1636.)  The court typically determines the mutual intent first by examining the words the parties chose and, when the language of the agreement itself is clear and unambiguous, that language governs.  (*Minkin*, at p. 948.)  If a particular term in the agreement is ambiguous, however, the court may also consider extrinsic evidence to prove the parties intended a specific meaning to which a given term is reasonably susceptible.  (*Ibid.*; *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.)  For example, the court may consider evidence concerning the circumstances under which the parties negotiated the contract, the subject matter of the contract, and the subsequent conduct of the parties.  (*Iberti*, at p. 1439.)  But it is the expressed objective intent of the parties—and not the unexpressed subjective intent of any one party—that governs.  (*Ibid.*)

The decision whether to admit extrinsic evidence involves a two-step process.  First, the court provisionally receives all credible evidence concerning the parties' intentions to determine "ambiguity," or in other words, whether the language is " 'reasonably susceptible' " to the interpretation urged by a party.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*).)  If the court decides the language is " 'reasonably susceptible' " to the urged interpretation in light of the extrinsic evidence, that evidence is then admitted to aid in the second step—interpreting the contract.  (*Ibid.*)  However, "[e]xtrinsic evidence offered to prove an interpretation to which a document is not reasonably susceptible is inadmissible."  (*In re Marriage of Dawley* (1976) 17 Cal.3d 342, 353, fn. 7; see *Winet*, at p. 1167 [parol evidence is inadmissible "to flatly contradict the express terms of the agreement"].)

"Different standards of appellate review may be applicable to each of these two steps, depending upon the context in which an issue arises. The trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact." (*Winet*, *supra*, 4 Cal.App.4th at p. 1165.)

Once it is determined that a given term is subject to more than one interpretation, however, the appellate court gives deference to the trial court's review of any conflicting extrinsic evidence and any associated credibility determinations, upholding the trial court's interpretation of the term so long as substantial evidence supports it. (*Minkin*, *supra*, 11 Cal.App.5th at pp. 948-949.) Under this standard, we will affirm the judgment if there is any substantial evidence, contradicted or uncontradicted, which supports the trial court's finding. (*Pusateri v. E. F. Hutton & Co.* (1986) 180 Cal.App.3d 247, 250 (*Pusateri*).) The testimony of a single witness, even that of the respondent, can provide substantial evidence, regardless of the number of witnesses or amount of evidence to the contrary. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

B. *Ambiguity Determination*

Although the trial court did not make an express finding that the word "bonus" is ambiguous, the court's statements at the May 2021 hearing indicate it implicitly concluded the term was reasonably susceptible to more than one meaning. The court acknowledged that the term could carry the broader meaning advocated by Wife, citing *Macilwaine, supra,* 26 Cal.App.5th at page 532. The court also found that "[t]he main issue here is contract interpretation" and that it needed "to examine the circumstances under which the parties negotiated and entered into" the MSA, citing *Minkin*,

14

*supra*, 11 Cal.App.5th at page 948. This implies that the court decided "bonus" was reasonably susceptible to the different interpretations urged by the parties, and that it should consider extrinsic evidence. (See *Winet, supra*, 4 Cal.App.4th at p. 1165.)

Upon de novo review of the trial court's conclusion that the term "bonus" in the MSA is ambiguous, we agree. The MSA does not define the term, and as the trial court pointed out, there was no express provision in the MSA *excluding* RSUs from "bonus." The court in *Minkin* found a similar provision ambiguous, noting that the term "annual bonus" could be interpreted as both "a discretionary payment based on performance or more broadly as any payment above base salary," which could include long-term incentive plans. (*Minkin, supra,* 11 Cal.App.5th at p. 949.) Courts in other jurisdictions have similarly concluded that the word "bonus" as used in the child support provision of a marital settlement agreement is ambiguous and can reasonably be interpreted to include stock options. (See, e.g., *Williams v. Williams* (2015) 88 Mass.App.Ct. 1109 [2015 WL 6159827, pp. *2-4]; *In re Marriage of Steverson* (Ill.Ct.App., Oct. 16, 2014, No. 2-14-0089) [2014 WL 5317742, p. *7].)

As Wife notes, the plain and ordinary definition of the term "bonus" can encompass employee compensation in the form of stocks or stock options. For example, Merriam-Webster defines the word "bonus" as "something in addition to what is expected or strictly due: such as [¶] . . . [¶] a premium (as of stock) given by a corporation to a purchaser of its securities, to a promoter, or to an employee." (Merriam-Webster Dict. Online (2022) <https://merriam-webster.com/dictionary/bonus> [as of Sept. 15, 2022], archived at <https://perma.cc/87LL-47LJ>; see also Black's Law Dict. (11th ed. 2019) p. 224, col. 2 [defining "bonus" as "[a] premium paid in addition to what is

due or expected"]; *J. C. Peacock v. Hasko* (1961) 196 Cal.App.2d 353, 359 [defining " 'bonus' " as " 'something . . . given in addition to an agreed compensation' "]; *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 96 (*Kerr*) [referring to Husband's "salary *and bonuses in the form of stock options*"].)

On the other hand, as we discuss *post*, Husband offers various reasons why the parties may not have intended to apply this broad dictionary definition of the term "bonus" to include stocks. Accordingly, we agree with the trial court that, as a matter of law, the term "bonus" in the MSA in this case is reasonably susceptible to the different meanings suggested by the parties.

Husband argues that there is no ambiguity as a matter of law, relying initially on section 29 of the MSA, which governs the division of Qualcomm RSUs. As the trial court noted, however, section 29 of the MSA only covers RSUs granted to the parties up to the date of separation; it does not shed any light on the question whether RSUs granted to Husband *after* the date of separation constitute "bonus" income within the meaning of the child support provision. In his reply brief, Husband concedes that Wife is "probably correct" that section 29 does not bear on the definition of "bonus" in the child support provision because section 29 deals with dividing assets. We agree with Wife, as did the trial court, that section 29 does not render the word "bonus" unambiguous as a matter of law for child support purposes.

Similarly, we reject Husband's argument that the MSA's reference to " 'commission' " renders the word " 'bonus' " unambiguous as a matter of law. Although Husband contends that the MSA's delineation of " 'commission' " as a separate category indicates that " 'bonus' " was also intended to be narrow, this argument merely supports his preferred interpretation of " 'bonus' " and

16

is not so definitive as to make the term clear and unambiguous as a matter of law.

Husband further contends that " 'bonus' " is unambiguous because Wife's interpretation "results in illegality, an impossibly indefinite contract" given that RSUs have varying values and tax implications, and requiring that the bonus income be paid to Wife within 10 days of " 'receipt' " was "hopelessly indefinite." According to Husband, Wife's interpretation would lead to "a hopeless exercise in speculation."

We disagree. The fact that stocks can fluctuate in value or implicate tax consequences has not prevented parties from agreeing to, and courts from applying, child support provisions that include stocks or stock options. (See, e.g., *Kerr, supra*, 77 Cal.App.4th at p. 95 [noting that generally, awarding percentages of stock value for child support may remove the need for further litigation, but reversing in that case because of an unforeseen "enormous increase in value of [the] stock and consequently [the husband's] stock options"]; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 287 [acknowledging that "certain difficulties inhere in calculating support based on income from stock options" but concluding that the Legislature has provided courts with the means for overcoming them].) Nor is the word "receipt" inapplicable to RSUs because, as noted in *Macilwaine,* stock options are comparable to salary voluntarily deferred; once they are vested, and restrictions are removed from exercising or selling them, they can be counted as income received. (*Macilwaine, supra*, 26 Cal.App.5th at p. 532.) The same is true of RSUs once they are vested and can be sold.

Finally, to the extent Husband argues that the word " 'bonus' " is made unambiguous by the fact that the support amounts met or exceeded Wife's and the children's needs, even without including RSUs, we disagree. Section

4053 expressly provides that children "should share in the standard of living of both parents" and that child support "may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." As noted, under section 4065, subdivision (a), the parties were free to stipulate to a child support amount above the guideline formula. Whether or not the agreed-upon support exceeded Wife's or the children's needs may be relevant to the question of interpretation, but in this context it does not render the provision unambiguous as a matter of law. Accordingly, we reject Husband's argument that the word "bonus" was not reasonably susceptible to Wife's urged interpretation.

C. *Interpretation of "Bonus"*

Having decided the term is ambiguous as applied to stock-based employee compensation, we next consider whether substantial evidence supports the trial court's interpretation of "bonus" as including Husband's RSUs. We conclude that it does.

It is undisputed that both parties were employed by Qualcomm and received cash bonuses and RSUs as compensation. Both parties were thus aware of and understood that RSUs were part of their Qualcomm compensation, making it likely that they would contemplate incorporating them into the MSA's support provisions in some form.

Wife submitted detailed declarations attesting that throughout their negotiations, the parties manifested their intention to include Husband's RSUs as part of the bonus analysis. With reference to specific dates and documents, Wife stated that the parties discussed and ultimately agreed to include both cash and stocks in child support. We cannot second-guess the trial court's weighing of the evidence as the trier of fact, including its implicit determination that Wife's attestations were more credible than Husband's.

18

(See *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1128.) Wife's declarations alone constitute substantial evidence to support the trial court's resolution of the conflicting extrinsic evidence in favor of her interpretation.

Wife also presented evidence that incorporating Husband's RSUs in child support, and not spousal support, was a negotiated benefit of the MSA. According to Wife, she made numerous concessions on spousal support to reduce the amount Husband would have to pay her, in exchange for an increase in the amount of child support he would have to pay for the children. In section 19 addressing spousal support, the MSA provided that "[f]or the period during which Husband's obligation to pay child support to Wife extends to both children, the parties expressly intend Husband's receipt of any bonus or commission income shall not be categorized as income available for spousal support during such period, as the parties have specifically negotiated and allocated said income as and for additional child support." As Wife points out, if Husband's post-separation receipt of RSUs was excluded from the category of additional child support, then a significant portion of Husband's income would not be accounted for in any form of support.

Finally, e-mails exchanged between the parties in early 2018 also suggest that they intended to include RSUs in the meaning of the word "bonus." In a February 1, 2018 e-mail discussing expenses *for the children,* Husband wrote that Wife was already "getting %50 [*sic*] of my bonus and [stock] and child support. I think kids['] expenses should be shared." In an earlier January 19, 2018 e-mail about the parties' salary increases, Husband noted that the monthly child support "is already 25% higher than guidelines . . . and stock and bonus is at 50% . . . ." He then asked Wife if she wanted to "adjust everything to the guidelines based on new numbers."

19

Because the subject matter of these e-mails was expenses for the children, the trial court could reasonably conclude that Husband was referring to his obligation to pay 50 percent of his "stock" in the context of child support, not division of assets.

Even though Husband relied on his own interpretation of these e-mails below, he contends for the first time on appeal that the MSA precluded the trial court from considering them to discern the parties' intent because the MSA contained an integration clause. Section 68.B of the MSA provides, in relevant part, that "[a]ny previous oral or written agreements between the parties about matters addressed in [the MSA] are entirely superseded by [the MSA]." Section 68.I provides that "[n]either of the parties . . . has made any representation or warranty to the other party upon which the other party is relying in entering into this Agreement, except as expressly provided in this Agreement."

Even assuming that Husband may raise this issue for the first time on appeal (see *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 21-23), the MSA's integration provisions do not foreclose consideration of the e-mail evidence. First, the e-mails were not presented as "previous oral or written agreements" such that section 68.B would apply. As for section 68.I, even in an integrated contract, extrinsic evidence may still be admitted to explain a provision's meaning if the meaning urged is one to which it is reasonably susceptible, and the extrinsic evidence is not being used to contradict the provision or offer an inconsistent meaning. (See *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) The e-mail evidence did not contradict, vary, or alter the meaning of the word "bonus" in the MSA, and both parties used the e-mails to urge a reasonable interpretation of the term. Moreover, the MSA did not have a provision broadly prohibiting any use of extrinsic

20

evidence "whatsoever" as in the case cited by Husband. (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1175-1176 [stating that "[o]rdinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue" but finding that the parties expressed their intent to "bypass the general rule" by agreeing to a contract provision that " 'no extrinsic evidence whatsoever may be introduced in any judicial proceedings involving this Agreement' "].) Accordingly, we reject Husband's argument that the trial court erred in considering the e-mails as extrinsic evidence.

In sum, substantial evidence supports the trial court's resolution of the ambiguity and its interpretation of the MSA to include Husband's RSUs as part of his "bonus" income.[8] Husband's various arguments for a different interpretation may or may not have supported a contrary result, but that is not the issue before us. We will affirm a judgment if there is any substantial evidence, contradicted or uncontradicted, which supports the court's finding. (*Pusateri, supra*, 180 Cal.App.3d at p. 250.) " 'We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party.' " (*In re Marriage of Brooks* (2019) 33 Cal.App.5th 576, 592.) Having concluded that substantial evidence

---

[8]    To the extent Husband argues on appeal that Wife's bonuses should have been factored into the guideline calculations or included as a set-off against his own payments (even though the MSA does not so provide), that issue is not properly before us. The time to appeal the dissolution judgment of May 17, 2018 has long passed, and the record does not indicate that Husband has ever filed a request with the trial court for an order modifying the child support provision. The trial court correctly found that this issue was not properly before it. Accordingly, we do not address the merits of this issue.

supports the trial court's findings based on the conflicting extrinsic evidence, we find no error in the court's interpretation of the word "bonus" in the MSA.

III

Finally, Husband contends that the court erred in calculating the arrears amount based on his RSUs because the court did not "mak[e] an accurate assessment of each parent's taxable income." More specifically, he argues that the court should have required that an accountant analyze the RSUs' vesting values, consider the amount withheld by Qualcomm, and then determine whether Husband might owe additional taxes. Again, we disagree.

A trial court's calculation of arrearages owed under an MSA is reviewed for substantial evidence. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1576-1577.) Here, the trial court's calculation was supported by the evidence presented by Wife. Husband offered no evidence contradicting her calculation beyond mere speculation about potential tax consequences. It was undisputed that Qualcomm withheld taxes on the RSUs, and Husband presented no evidence that additional taxes *would* be due. Husband did not argue that Wife's calculations inaccurately represented the vesting values of the relevant RSUs; indeed, he conceded that an accounting might even result in him getting a tax refund. Furthermore, as Wife pointed out, because the MSA requires Husband to remit the owed portion of additional child support within 10 days of receipt, conducting a full year-end accounting would be inconsistent with the terms of the MSA.

The trial court ultimately found that Husband failed to produce any evidence controverting Wife's calculation, despite having had access to the underlying information "for many months[.]" The court went on to find that Husband "had ample opportunity to consult with his own accountant, his own personal accountant or expert accountant," and yet did not do so. The court

22

was entitled to draw an adverse inference against Husband based on his failure to produce evidence that he would have to pay additional taxes on the RSUs.  If a party fails to produce evidence that would naturally have been produced, " 'he must take the risk that the trier of fact will infer, and properly so, that the evidence, had it been produced, would have been adverse.' " (*Williamson v. Superior Court of Los Angeles County* (1978) 21 Cal.3d 829, 835, fn. 2, italics omitted.)  We conclude that the trial court's arrears order with respect to Husband's RSUs is supported by substantial evidence.

DISPOSITION

The orders are affirmed.  Respondent shall recover her costs on appeal.


BUCHANAN, J.

WE CONCUR:


MCCONNELL, P. J.


AARON, J.

23